IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| **SARAH SOLOMON,** *on behalf of herself and all individuals similarly situated*, | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| v. | ) Civil Action No. 3:19-cv-0266<br>)<br>) |
| **EQUIFAX INFORMATION SERVICES, LLC** | )<br>)<br>) |
| **SERVE:** Corporation Service Company, Registered Agent<br>100 Shockoe Slip<br>2nd Floor<br>Richmond, VA 23219, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendant.** | ) |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, SARAH SOLOMON, ("Plaintiff"), *on behalf of herself and all individuals similarly situated*, by counsel, and for her Complaint against EQUIFAX INFORMATION SERVICES, LCC ("Defendant") she alleges as follows:

### PRELIMINARY STATEMENT

1. Section 1681e(b) is one of the cornerstone provisions of the Fair Credit Reporting Act ("FCRA"), requiring consumer reporting agencies ("CRAs") to maintain reasonable procedures to assure maximum possible accuracy in their credit reporting. 15 U.S.C. § 1681e(b).

2. This consumer class action challenges the uniform policies and procedures of Defendant **EQUIFAX INFORMATION SERVICES, LLC** regarding debts discharged through Bankruptcy cases that are converted from Chapter 13 to Chapter 7.

3. When faced with Bankruptcy, most consumer debtors have the option of proceeding under Chapter 13. *See generally* 11 U.S.C. § 109(g). One of the greatest benefits of Chapter 13 is its flexibility. Under 11 U.S.C. § 1307, a debtor may convert a Chapter 13 case to a Chapter 7 case "at any time," and the right to convert a Chapter 13 to a Chapter 7 is non-waivable.

4. Converting a case from Chapter 13 to Chapter 7 "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." 11 U.S.C. § 348(a). Thus, "in a case converted from Chapter 13, a debtor's postpetition earnings and acquisitions do not become part of the new Chapter 7 estate." *Sherman v. Wal–Mart Assocs., Inc.*, 550 B.R. 105, 109 (N.D. Tex. 2016) (citing *Harris v. Viegelahn*, 135 S. Ct. 1829, 1837, 191 L. Ed. 2d 783 (2015)).

5. Although the Bankruptcy petition date in a converted case remains unchanged, debts that the consumer incurs after the Bankruptcy filing (but prior to the conversion) are included in the Bankruptcy discharge, as though they were incurred pre-petition. *See* 11 U.S.C. § 348(d). Simply put, converting a Chapter 13 to a Chapter 7 allows the debtor to discharge debts that were incurred during the Chapter 13.

6. Defendant has failed to implement any policies or procedures for ensuring that it properly reports these post-petition, pre-conversion debts as discharged, and Defendant erroneously and systematically reports these discharged debts as due and owing and/or past due. Defendant's practices deprive consumers of their important statutory right under 15 U.S.C. § 1681e(b) to have *only* maximally accurate information reported on their credit.

7. Further, Defendant is aware of the failures of its reporting of Chapter 7 discharged tradelines as it has repeatedly been sued for the same misconduct, and in fact entered into a

national injunction against the same misconduct in 2008. *White v. Experian Info. Solutions, Inc*., et al. Case No. 8:05-cv-01070 (C.D. Cal. Aug. 19. 2008) (Doc. No. 338) (Exhibit "A"). Defendant has to date refused to apply the standards established by this injunction to the Chapter 7 discharges that it reports after conversion from a Chapter 13 filing.

## JURISDICTION

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

9. Venue is proper in this District and Division because a substantial part of the events and omissions giving rise to the claim occurred in this District and Division. Plaintiff resides here and her Bankruptcy proceedings occurred here. The entire Virginia sub-class resides in the Commonwealth of Virginia.

## PARTIES

10. Plaintiff Sarah Solomon is a natural person, a resident of the Richmond Division and is a "consumer" as defined by 15 U.S.C. §1681a(c).

11. Defendant **EQUIFAX INFORMATION SERVICES, LLC** ("Equifax") is a limited liability company authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, VA. **Equifax** is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). **Equifax** is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

## FACTS

### *Plaintiff's Experience*

12. On or around May 17, 2018, Plaintiff submitted applications for a car loan to several lenders.

13. As part of this process, those lenders requested copies of Plaintiff's credit reports from Defendant.[1]

14. On or around May 17, 2018, Defendant furnished reports to those lenders containing grossly inaccurate information attributed to Plaintiff.

15. The **Equifax** credit report wrongly indicated that Plaintiff was past due on four different accounts: two accounts with Comenity Bank, one account with Discover, and one account with TD Bank USA.

16. This information was inaccurate—Plaintiff received a Bankruptcy discharge in March 2018 from the United States Bankruptcy Court for the Eastern District of Virginia.

17. Plaintiff's original Bankruptcy filing was under Chapter 13, and she incurred the above-reported debts after filing her Chapter 13 petition. She later converted the Chapter 13 proceeding to a Chapter 7.

18. It is black letter Bankruptcy law that the conversion caused the above-reported debts to be treated as though they were incurred before the filing of the Chapter 7 petition, meaning any Bankruptcy discharge would include those debts.

19. As a result of Plaintiff converting her Bankruptcy to a Chapter 7, the debts that she owed to Comenity Bank, Discover, and TD Bank USA were included in her discharge. Defendant's reporting of them as due and owing or past due was therefore inaccurate.

20. This information was easily, cost effectively, and publically available to Defendant before it furnished any of the subject credit reports regarding Plaintiff.

21. Defendant could have caught these inaccuracies if it implemented and followed even simple automated processes within its reporting procedures.

---

[1] Americredit Financial Services, Capital One, Ally Financial, and C&F Finance Company requested copies of Plaintiff's credit report from Equifax.

22. If Defendant had reasonable procedures (or any procedures whatsoever) to assure maximum possible accuracy, it would have easily determined that these accounts were discharged in Plaintiff's Bankruptcy. Because Defendant could learn this information easily by reviewing the Bankruptcy records, concluding that the debts were discharged would not require Defendant to make any inquiry to Plaintiff personally, or even require Defendant to obtain information from a credit furnisher.

23. Defendant should have been alerted to the inaccuracy of its reports because the public records section of Plaintiff's credit reports each included an entry regarding the Bankruptcy, which initially indicated that Plaintiff had filed a Chapter 13, and was subsequently changed to reflect that Plaintiff had converted her case to a Chapter 7, and Defendant had direct access to the Bankruptcy records confirming this fact.

24. Furthermore, Defendant should have been alerted that the post-filing accounts were discharged because several other accounts, which were opened post-petition but pre-conversion, were updated to correctly show that they were included in Plaintiff's discharge.

25. Defendant knowingly choose to ignore these obvious red flags in violation of § 1681e(b).

26. As a result of Defendant's conduct, Plaintiff and the putative class members suffered particularized and concrete injuries, including damages to their reputations, reductions to their credit scores, and increased risks that they would be denied credit. *In re Helmes*, 336 B.R. 105 (Bankr. E.D. Va. 2005) (explaining "a credit report entry that reflects a past due account is treated differently by prospective creditors in evaluating credit applications than an entry that reflects a debt that has been discharged in Bankruptcy. The essential difference is that a discharged debt represents a historical fact, that the prospective borrower filed Bankruptcy in

5

the past and was relieved from the obligation. Nothing is now due. A past due debt represents a delinquent but legally enforceable obligation that must be resolved.").

### *Defendant's Business Model and Notice Regarding Bankruptcy Inaccuracies*

27. Defendant has a long history of government enforcement actions, consumer complaints, and lawsuits establishing that it and the other national consumer reporting agencies systematically inaccurately report information related to debts discharged in Bankruptcy. *See, e.g., White v. Experian Info. Solutions, Inc.*, et al., Case No. 8:05-cv-01070 (C.D. Cal.); *Acosta v. Trans Union*, 243 F.R.D. 377, n.3 (C.D. Cal. 2007) (citing a Bankruptcy lawyer's survey of approximately 900 clients found that 64% of Trans Union reports and 66% of Equifax reports erroneously list one or more discharged debts as due and owing).

28. In fact, in *White*, Defendant was the subject of a national court injunction requiring it to ensure that it did not report tradelines that were included in Chapter 7 discharges. Here, it plainly ignored that requirement for Chapter 13 conversions. And whether or not that injunction binds Defendant here, it certainly provided it actual notice sufficient to have predicted and prevented the inaccuracies addressed in this complaint.

29. Despite the frequent inaccuracies related to accounts discharged in Bankruptcy, Defendant continues to maintain unreasonable procedures regarding the manner in which it publishes Bankruptcy-related information.

30. If Defendant had reasonable procedures (or, perhaps any procedure) to assure maximum possible accuracy, it would have easily determined that these accounts were discharged in Bankruptcy. All that is required is a review of the records Defendant has in its possession and is reporting, yet Defendant does not have appropriate procedures in place to ensure its reporting is as maximally accurate as possible.

6

31. Defendant should have been alerted to the inaccuracy of its reports because the public records section of Plaintiff's credit reports each included an entry regarding the Bankruptcy, which initially indicated that Plaintiff had filed a Chapter 13, and was subsequently changed to reflect that Plaintiff had converted her case to a Chapter 7.

32. To that end, Defendant should have been alerted that the subject accounts were discharged because several other accounts, which were also opened post-petition but pre-conversion, were updated to correctly show that they were included in Plaintiff's discharge.

33. However, upon information and belief, despite the abundance of notice available to Defendant regarding the frequent errors in its Bankruptcy related credit information, Defendant does not independently review the information that it receives from furnisher customers.

34. Instead, Defendant merely parrots the information about accounts included in Bankruptcy that it receives from furnishers, without taking any additional steps to ensure that the accounts are updated after a consumer receives a discharge.

35. While these furnishers may incorrectly report to Defendant that the debts are valid and due, Defendant's own records would inform it that the debts were discharged.

36. Upon information and belief, Defendant has actual knowledge of the problems associated with its systematic, erroneous reporting of one or more discharged debts as due and owing, yet it deliberately chooses to ignore these problems because reviewing and/or cross-checking the data would reduce its bottom line.

37. At all times relevant to this Complaint, Defendant's conduct was willful and carried out in reckless disregard for consumers' rights under the FCRA. By example only and without limitation, Defendant's conduct was willful because it ran a risk of harm that was known

7

or so obvious it should have been known by failing to implement any procedure to identify and correct these common errors prior to furnishing reports.

38. Prior litigation and government oversight has highlighted these systematic issues. Defendant failed to adopt any procedures despite the fact that it have been subject to court decisions critical of similar conduct. *White*, No. 8:05-cv-01070; *Acosta*, 243 F.R.D. 377, n.3; *see also* Federal Trade Comm., 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, at 67 (July 2011) ("However, when a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.").[2]

## COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681e(b)
## Class Claim

39. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length in this paragraph.

40. **The 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

> All natural persons who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the public record section of the consumer report indicated that the consumer had received a Chapter 7 Bankruptcy discharge; (3) where the public record section of the consumer's file with Defendant previously referred to the Chapter 7 Bankruptcy as a Chapter 13 Bankruptcy, and (4) the report indicated an outstanding balance or a past due amount on an account on the report that was

---

[2] *Available at* https://www.ftc.gov/sites/default/files/documents/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations/110720fcrareport.pdf.

opened after the Bankruptcy was filed and before the Bankruptcy was converted from a Chapter 13 to a Chapter 7.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

41. **The Virginia 1681e(b) Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows:

All natural persons with a primary address located in Virginia, within Defendant's file who (1) were the subject of a consumer report furnished by Defendant to a third party within five years before the filing of this action; (2) where the public record section of the consumer report indicated that the consumer had received a Chapter 7 Bankruptcy discharge; (3) where the public record section of the consumer's file with Defendant previously referred to the Chapter 7 Bankruptcy as a Chapter 13 Bankruptcy, and (4) the report indicated an outstanding balance or a past due amount on an account on the report that was opened after the Bankruptcy was filed and before the Bankruptcy was converted from a Chapter 13 to a Chapter 7.

Excluded from the class are all persons who have signed a written release of their claim, and/or are counsel in this case, or employed by the Federal Judiciary.

42. **Numerosity**. Upon information and belief, Plaintiff alleges that the 1681e(b) class and subclass are so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by Defendant and the class members may be notified of the pendency of this action by publication or mailed notice.

43. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all putative class members. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had reasonable procedures to assure that it did not erroneously list one or more discharged debts as due and owing and/or past due; (b) whether this conduct constituted a violation of the FCRA; and (c) whether the

violation was negligent, reckless, knowing, or intentionally committed in conscious disregard of the rights of the Plaintiff and putative class members.

44. **Typicality**. Plaintiff's claims are typical of the claims of each putative class member and all are based on the same facts and legal theories. Plaintiff, as every putative class member, alleges a violation of the same FCRA provision, 15 U.S.C. §1681e(b). This claim challenges the credit reporting procedures of Defendant and does not depend on any individualized facts. For purposes of class certification, Plaintiff seeks only statutory and punitive damages. The recovery of class statutory and punitive damages is ideal and appropriate in circumstances like this one, where injuries are particularized and concrete, but difficult to quantify. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the class.

45. **Adequacy**. Plaintiff will fairly and adequately protect the interests of the class and subclass. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted those responsibilities.

46. Certification of the class and subclass under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

a. As alleged above, the questions of law or fact common to the members of the class and subclass predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual issues. Given the complex and extensive litigation necessitated by Defendant's conduct, using individual prosecution to obtain the statutory and punitive damages sought by each member

would prove burdensome and expensive. Further, those individual issues that do exist can be effectively streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

        b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring their claims individually. Further, most consumers affected by Defendant's conduct described above are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

      47.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff and the putative class members, by erroneously listing one or more discharged debts as due and owing and/or past due where it was apparent that the consumer had received a Bankruptcy discharge in a Bankruptcy case that was converted from a Chapter 13 to a Chapter 7.

      48.     Defendant's violations of 15 U.S.C. § 1681e(b) were willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

49. Plaintiff and the putative class members are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff moves for class certification and for judgment against Defendant, as alleged for statutory damages and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs, and other specific or general relief as the Court finds just and appropriate.

**TRIAL BY JURY IS DEMANDED**.

Respectfully submitted,
**SARAH SOLOMON**

By: */s/ Emily Connor Kennedy*
Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Stephen F. Relyea, VSB# 77236
**Boleman Law Firm, P.C.**
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
Email: sfrelyea@bolemanlaw.com


Leonard A. Bennett, VSB #37523
Elizabeth W. Hanes, VSB #75574
Craig C. Marchiando, VSB #89736
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: elizabeth@clalegal.com
Email: lenbennett@clalegal.com
Email: craig@clalegal.com

*Counsel for Plaintiff*